IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **ALAN CONTRERAS** and **NUBIA HERRERA,** | § § § | |
| Plaintiffs, | § § § | |
| *versus* | § § | |
| **GUARDIAN LITIGATION GROUP, LLP,** a District of Columbia Limited Liability Partnership | § § § § | **Civil Action No. 3:24-CV-416** |
| Defendant, | § § | |
| And | § § | **DEMAND FOR JURY TRIAL** |
| **BETTER DEBT SOLUTIONS, LLC,** a California Limited Liability Company | § § § | **CLASS ACTION COMPLAINT** |
| Defendant | § § § § § § | |

**INTRODUCTION**

Plaintiffs ALAN CONTRERAS ("Contreras") and NUBIA HERRERA ("Herrera')(collectively, "Plaintiffs") , individually and jointly bring this Complaint against Defendants GUARDIAN LITIGATION GROUP, LLP ("Guardian") and BETTER DEBT SOLUTIONS, LLC ("BDS")(collectively, "Defendants") to stop their illegal practice of placing, unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by their attorney.

**PARTIES**

1. Plaintiff Alan Contreras is an individual residing in El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

2. Plaintiff Nubia Herrera is an individual residing in El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

3. Plaintiffs may be served any relevant papers via email to their counsel Omar Darwich at omar@darwichlegal.com.

4. Defendant Guardian Litigation Group, LLP is a limited liability partnership organized and existing under the laws of District of Columbia and can be served via its registered agent Incorp Services, Inc. at 4505 Pacific Hwy E, Suite C-2, Fife, WA 98424.

5. Defendant Better Debt Solutions LLC is a limited liability company organized and existing under the laws of District of California and can be served via its registered agent Nima Asadi, ESQ. at 19200 Von Karman Ave, Suite 600, Irvine, CA 92612.

## JURISDICTION AND VENUE

6.  This action is brought by Plaintiffs pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7.  This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331 and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code pursuant to 28 U.S.C. § 1367.

8.  This Court has general personal jurisdiction over the Defendants as they, upon information and belief, authorized unsolicited telephone calls to be placed on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

9.  Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim alleged herein occurred within the Western District of Texas,

## STATEMENT OF FACTS

10. Plaintiffs reallege paragraphs one through nine and incorporate them herein as if set forth here in full.

11. Plaintiff Contreras personal cell phone (XXX) XXX-2995 has been registered on the National Do-Not-Call Registry since February 22, 2022.

12. Plaintiff Herrera's personal cell phone (XXX) XXX-0489 has been registered on the National Do-Not-Call Registry since April 3, 2024.

13. Plaintiffs Contreras and Herrera have never instructed the National Do-Not-Call Registry administrator to remove them from the National Do-Not-Call Registry.

14. Plaintiffs Contreras and Herrera have been on the National Do-Not-Call Registry at all times relevant to this Complaint.

15. Plaintiffs Contreras and Herrera telephone numbers 2995 and 0489 are residential numbers.

16. Plaintiffs Contreras and Herrera telephone numbers 2995 and 0489 are used for personal purposes and are not associated with any business.

17. Defendant Guardian offers legal representation for debt relief services to consumers.

18. Defendant Guardian is barred by ethics from making direct solicitation phone calls to consumers with whom no preexisting relationship exists.

19. Upon information and belief, Defendant BDS makes solicitation phone calls on behalf of Guardian because Guardian is barred from making these calls themselves and in an effort to evade ethics violations.

20. Upon information and belief, Defendant Guardian provides Defendant BDS with calling lists to thousands of consumers' residential phone numbers.

21. Upon information and belief, Defendant Guardian instructs Defendant BDS to call the phone numbers on the calling lists provided by Guardian.

22. Upon information and belief, Defendant Guardian instructs BDS to use an artificial or prerecorded voice message when making these telemarketing calls.

23. Upon information and belief, Defendant Guardian provides BDS with qualifications a consumer must meet to qualify for Guardian's services.

24. Upon information and belief, Defendant Guardian authorizes BDS to act as Guardian's agent by instructing BDS on how much to charge a new client and sending the new client a retainer agreement to sign on behalf of Defendant Guardian.

25. Upon information and belief, Defendant Guardian pays BDS a commission fee for every new client BDS retains for Defendant Guardian.

26. Upon information and belief, Defendants Guardian and BDS have generated substantial profits by violating the TCPA and generating new clients through illegal telemarketing.

27. Plaintiffs Contreras and Herrera have never had any relationship with Defendants Guardian and BDS or have never been a customer of Defendants.

28.  Plaintiffs Contreras and Herrera never gave Defendants Guardian or BDS their prior express written consent to receive the alleged calls in this case.

29. On May 29, 2024, at 1:38 PM, Plaintiff Herrera received a call to her phone number 0487 from phone number (470) 492-1287 that played an artificial or prerecorded voice message when Plaintiff Herrera answered.

30. The artificial or prerecorded voice message did not identify either Defendants Guardian or BDS.

31. Plaintiff Herrera engaged in the call and pressed "two" for the sole purpose of investigating who was behind the robocall.

32. Plaintiff Herrera was then connected to a male agent with Defendant BDS who advised Plaintiff Herrera the call was regarding a personal loan offer.

33. The agent with Defendant BDS then asked Plaintiff Herrera qualifying questions regarding her debt, income, address, bank information, and other personally identifiable information.

34. After Plaintiff Herrera provided all her personal information, she was transferred to another agent with Defendant BDS named "Taylor" and the call dropped.

35. Taylor immediately called Plaintiff Herrera back from phone number 949-484-6771 at 1:45 pm.

36. Taylor asked Plaintiff Herrera the same qualifying questions as the previous agent and solicited Plaintiff for a debt relief program on behalf of Defendants BDS and Defendant Guardian.

37. Taylor advised Plaintiff Herrera the terms of the program would be $387.79/month for 43 months.

38. While on the call, Plaintiff Herrera received an email from Taylor from email tduran@betterdebtsolutions.com identifying Defendant BDS. *See Exhibit A.*

39. Additionally, within the same email Plaintiff Herrera received from Taylor, the email contained an engagement agreement from Defendant Guardian for Plaintiff Herrera to sign identifying Defendant Guardian. *See Exhibit B.*

40. Plaintiff Contreras received at least two voicemails to his phone number 2995 from Defendant BDS that contained the same artificial or prerecorded voice message soliciting a personal loan.

41. The date, time, and phone number displayed on Plaintiff's Caller ID are as follows:

    **Call 1:** 9/18/2024 at 2:15pm from phone number 719-309-3527
    **Call 2:** 9/24/2024 at 5:38pm from phone number 252-693-0617

42. The artificial or prerecorded voice message did not identify either Defendants Guardian or BDS and left the same call back phone number for Plaintiff Contreras to call back 877-941-1106.

43. On September 30, 2024, at 12:13pm, Plaintiff Contreras called back phone number 877-941-1106 that was left in the voicemails for the sole purpose of investigating who was behind the robocalls.

44. Plaintiff Contreras was connected to an agent with Defendant BDS named Brayan.

45. Brayan stated to Plaintiff Contreras,

"Ugh look we were trying to get a hold of you because we noticed that you might have some unsecured debt that you're trying to take care of and we do have a personal loan offer for you."

46. Brayan asked Plaintiff Contreras qualifying questions regarding his debt, income, address, bank information, and other personally identifiable information and solicited Plaintiff Contreras for a debt relief program on behalf of Defendants BDS and Defendant Guardian.

47. Brayan advised Plaintiff Contreras that the terms of the program would be $404.62/month for 38 months.

48. While on the call, Plaintiff Contreras received an email from Brayan from email bmeraz@betterdebtsolutions.com identifying Defendant BDS. *See Exhibit C.*

49. Plaintiff Contreras received a second email from Brayan that contained an engagement agreement from Defendant Guardian for Plaintiff Contreras to sign identifying Defendant Guardian. *See Exhibit D.*

50. During the call, Brayan stated to Plaintiff Contreras that Defendant BDS is the "sister company" of Defendant Guardian.

51. The alleged calls were made to Plaintiffs Contreras and Herrera for the purpose of encouraging the purchase of a Defendants Guardian and Defendant BDS goods and services.

52. The alleged calls made to Plaintiffs Contreras and Herrera were clearly pre-recorded because (a) they were sent with automated technology used to mask Caller IDs (b) they used a singular monotone voice (c) they contained a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played.

53. Defendants Guardian and BDS employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

54. Upon information and belief, neither Defendants Guardian nor BDS do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiffs Contreras and Herrera are Texas residents.

55. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain either Defendants Guardian or BDS registration.

56. Neither Defendants Guardian nor BDS qualify for an exemption under § 302.053.

57. Plaintiffs Contreras or Herrera never provided their prior express written consent to receive any of the alleged calls.

58. The alleged calls were nonconsensual encounters that were not made for emergency purposes.

59. Upon information and belief, the alleged calls were placed while knowingly ignoring the national do-not-call registry.

60. Upon information and belief, the alleged calls were placed without Defendants training their agents on the use of an internal do-not-call policy.

**BASIS FOR LIABILITY**

61. Plaintiffs Contreras and Herrera reallege paragraphs one through sixty and incorporate them herein as if set forth here in full.

62. Even if Defendant Guardian did not personally make the TCPA violating calls to Plaintiffs Contreras and Herrera, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

63. Plaintiffs Contreras and Herrera reallege paragraphs one through sixty-two and incorporate them herein as if set forth here in full.

64. Upon information and belief, Defendant Guardian contracted with Defendant BDS to generate prospective customers through illegal telemarketing calls.

65. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

66. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

67. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

68.  Defendant BDS solicited Plaintiffs Contreras and Herrera on behalf of Defendant
     Guardian. Accordingly, Defendant BDS had Defendant Guardian's actual authority to
     solicit Plaintiffs through illegal telemarketing calls.

## APPARENT AUTHORITY

69.  Plaintiffs Contreras and Herrera reallege paragraphs one through sixty-eight and
     incorporate them herein as if set forth here in full.

70.  The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer
     has apparent authority:

     [A]pparent authority may be supported by evidence that the seller allows the outside sales
     entity access to information and systems that normally would be within the seller's
     exclusive control, including: access to detailed information regarding the nature and
     pricing of the seller's products and services or to the seller's customer information. The
     ability by the outside sales entity to enter consumer information into the seller's sales or
     customer systems, as well as the authority to use the seller's trade name, trademark and
     service mark may also be relevant. It may also be persuasive that the seller approved,
     wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be
     responsible under the TCPA for the unauthorized conduct of a third-party telemarketer
     that is otherwise authorized to market on the seller's behalf if the seller knew (or
     reasonably should have known) that the telemarketer was violating the TCPA on the
     seller's behalf and the seller failed to take effective steps within its power to force the
     telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

71.  Upon information and belief, Defendant Guardian authorized Defendant BDS to generate
     prospective business for them through illegal telemarketing.

72.   Defendant BDS called and solicited Plaintiffs Contreras and Herrera for debt relief
     services on behalf of Defendants and sent an engagement agreement from Defendant
     Guardian for Plaintiffs to execute. The integration of Defendants sales efforts was so
     seamless that it appeared to Plaintiffs Contreras and Herrera that Defendants all appeared
     to be acting together as the same company.

73. Consumers, including Plaintiffs Contreras and Herrera and members of the Class, reasonably believed and relied on the fact that Defendant BDS had received permission to sell, market, and solicit services of Defendant Guardian.

74. As a direct and proximate result of  Defendant BDS's illegal phone calls – which were made on behalf of and with the apparent authority of Defendant Guardian, Plaintiffs Contreras and Herrera and Class suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

75. Upon information and belief, numerous Plaintiffs exist that suffered the same exact harm as did Plaintiffs Contreras and Herrera.

## RATIFICATION

76. Plaintiffs Contreras and Herrera reallege paragraphs one through seventy-five and incorporate them herein as if set forth here in full.

77. Defendant Guardian knowingly and actively accepted business that originated through the illegal calls placed by Defendant BDS.

78. By accepting these contacts and executing contracts with the robocall victims, Defendant BDS "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant Guardian, as described in the Restatement (Third) of Agency.

79. Defendant Guardian received new customers and the possibility of new business.

80. Defendant Guardian ratified Defendant BDS's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

81. Defendant Guardian further ratified Defendant BDS's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

82. As a direct and proximate result of Defendant BDS's illegal phone calls, Plaintiffs Contreras and Herrera and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

## CLASS ALLEGATIONS

83. Plaintiffs reallege paragraphs one through eighty-two and incorporate them herein as if set forth here in full.

84. Plaintiffs pursuant to local rules shall move to certify this complaint as a Class Action.

85. Plaintiffs will identify the class, exclusions of the class, numerosity, typicality, adequacy of representation, generality, commonality, predominance, and superiority in Plaintiffs' Motion to Certify.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANTS' ACTIONS

86. Plaintiffs Contreras and Herrera reallege paragraphs one through eighty-five and incorporate them herein as if set forth here in full.

87. The alleged calls harmed Plaintiffs Contreras and Herrera by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

88. The alleged calls harmed Plaintiffs Contreras and Herrera by trespassing upon and interfering with his rights and interests in their cellular telephone.

89. The alleged calls harmed Plaintiffs Contreras and Herrera by intruding upon their seclusion.

90. Plaintiffs Contreras and Herrera have been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of their cell phone.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(Against All Defendants)**

91. Plaintiffs Contreras and Herrera reallege paragraphs one through ninety and incorporate them herein as if set forth here in full.

92. Defendants placed telephone calls to Plaintiffs Contreras and Herrera's cellular and/or residential telephones without having their prior express written consent to do so.

93. The alleged calls were made for the express purpose of soliciting customers for Defendants goods and services.

94. When Plaintiffs Contreras and Herrera answered, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

95. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiffs Contreras and Herrera's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

96. Defendants and/or their agents made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

97.   If the court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**<u>Second Cause of Action</u>:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(Against All Defendants)**

98.   Plaintiffs Contreras and Herrera reallege paragraphs one through ninety-seven and incorporate them herein as if set forth here in full.

99.   The telephone numbers of Plaintiffs Contreras and Herrera are registered on the Do Not Call Registry.

100.  Defendants' and/or its agents placed unsolicited phone calls to Plaintiffs Contreras and Herrera's DNC registered telephones without having their prior written consent to do so.

101.  Defendants' actions constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

102.  Defendants solicitating phone calls were made for the commercial purpose of soliciting debt relief services to consumers.

103.  As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiffs Contreras and Herrera's personal privacy, causing them to suffer damages.

104.  Plaintiffs Contreras and Herrera are entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

105.  Plaintiffs Contreras and Herrera also seek a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**Third Cause of Action:**
**Violations of The Texas Business and Commerce Code § 305.053**
**(Against All Defendants)**

106.  Plaintiffs Contreras and Herrera reallege paragraphs one through one hundred and five and incorporate them herein as if set forth here in full.

107.  The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

108.  The foregoing acts and omissions of Defendants and/or its agents constitute multiple violations of the Texas Business and Commerce Code § 305.053, by making non-emergency telemarketing calls to Plaintiffs Contreras and Herrera cellular telephone number without their prior express written consent in violation of 47 U.S.C. § 227 *et seq*.

109.  The Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an artificial or prerecorded voice message that does not comply with the technical and procedural standards under this subsection.

110.  Plaintiffs Contreras and Herrera seek for themselves an award of at least $500.00 in damages for each such violation. Texas Business and Commerce Code § 305.053(b)

111.  Plaintiffs Contreras and Herrera seek for themselves an award of up to $1,500.00 in damages for each such knowing or willful violation. Texas Business and Commerce Code § 305.053(c).

**Fourth Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(Against All Defendants)**

112.  Plaintiffs Contreras and Herrera reallege paragraphs one through one hundred and eleven and incorporate them herein as if set forth here in full.

113.  Defendants' illegal solicitation sales calls to Plaintiffs Contreras and Herrera  without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

114.  Upon information and belief, the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls through Defendant BDS to Texas residents without having a registration certificate and bond on file with the Texas Secretary of State.

115.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

116.  As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Plaintiffs Contreras and Herrera may seek damages of up to $5,000.00 for each violation. *Texas Business and Commerce Code § 302.302(a).*

117.  As a result of the Defendants violations of §302.101, Plaintiffs Contreras and Herrera seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Alan Contreras and Nubia Herrera, individually and jointly  pray for the following relief:

A.  An order declaring that the Defendants actions, as set out above, violate 227(b) of the TCPA;

B.  An order declaring that the Defendants actions, as set out above, violate 227(c) of the TCPA;

C.  An order declaring that the Defendants actions, as set out above, violate the TCPA willfully and knowingly;

D.  An award of $1,500.00 per call in statutory damages arising from the TCPA §227(b) for each intentional violation and $500.00 for each unintentional found violation;

E.  An award of $1,500.00 per call in statutory damages arising from the TCPA §227(c) for each intentional violation and $500.00 for each unintentional found violation;

F.  An award of $1,500.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 305.053;

G.  An award of $5,000.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101;

H.  An injunction requiring Defendants to cease sending all unlawful calls;

I.  An award of reasonable attorneys' fees and costs; and

J.  Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated this 15th day of November 2024.

Respectfully Submitted,


The Darwich Law Firm, LLC
  /Omar F. Darwich/ _____
Omar F. Darwich
Tx Bar No. 24124686

10921 Pellicano Dr, #100
El Paso, TX 79935

(915) 671-2221
omar@darwichlegal.com

**ATTORNEY FOR PLAINTIFF**